**FIRST STATE BANK OF HOLLY SPRINGS, MISSISSIPPI, et al.**

v.

**Bill WYSSBROD, et al.**

Court of Appeals of Tennessee.
Western Section, at Jackson.

April 23, 2003 Session.

July 23, 2003.

Permission to Appeal Denied by
Supreme Court Dec. 22, 2003.

See also 798 So.2d 352.

James R. Garts, Jr.; Michael F. Rafferty, Memphis, for Appellant, Martin Aussenberg.

Robert P. Chamberlin; Tamara B. Rowsey, Hernando, Mississippi, for Appellee, First State Bank of Holly Springs, Mississippi.

Ivan D. Harris, Jr., Collierville, for Appellee, Jackson H. Wittjen.

## OPINION

**W. FRANK CRAWFORD, P.J., W.S.,** delivered the opinion of the court, in which **DAVID R. FARMER, J.** and **HOLLY M. KIRBY, J.,** joined.

This case involves the enrollment of Mississippi judgments pursuant to the Uniform Enforcement of Foreign Judgments Act, T.C.A. § 26–6–101 et seq. Appellant, a Tennessee attorney, was admitted, *pro hac vice* by a Mississippi trial court, to represent a plaintiff client in a civil suit. Appellees-defendants in the Mississippi proceeding were, *inter alia,* awarded judgments against appellant and his client for attorney fees and expenses pursuant to the Mississippi Litigation Accountability Act of 1988, Miss.Code Ann. § 11–55–1, et seq. Appellees' petition to enroll the foreign judgments against appellant was granted by the trial court, and appellant appeals. We affirm.

These consolidated cases involve actions filed pursuant to the Uniform Enforcement of Foreign Judgments Act, codified at Tennessee Code Annotated § 26–6–101 et seq., to enroll and enforce in Tennessee judgments entered by the circuit court of Mississippi against appellant Martin H.

Aussenberg ("Aussenberg"). Appellant Aussenberg is a licensed Tennessee attorney engaged in the private practice of law in Memphis, Tennessee. In May 1995, Aussenberg was hired as lead counsel to represent Quality Pallets, Inc. ("QPI"), and its president William Wyssbrod ("Wyssbrod") d/b/a W.W. Companies ("WWC") in an action filed by Wyssbrod, individually and derivatively on behalf of QPI and WWC, against Jackson H. Wittjen ("Wittjen") and First State Bank of Holly Springs, Mississippi ("First State"). The complaint, filed in the Circuit Court of DeSoto County, Mississippi, alleged actions for tortious breach of contract, bad faith, and interference with business relations.[1] For the purpose of representing Quality Pallets in this litigation, Aussenberg was admitted to practice in Mississippi *pro hac vice.*

In presenting the pertinent procedural history relating to the original claims filed by Wyssbrod individually and derivatively on behalf of QPI and WWC, and the counterclaims filed by Wittjen and First State, we quote at length from the Mississippi Supreme Court's decision in *Wyssbrod v. Wittjen,* 798 So.2d 352 (Miss.2001):

1. To provide a brief factual background of the dispute that led to the original Mississippi litigation, we quote from the Mississippi Supreme Court's decision in *Wyssbrod v. Wittjen,* 798 So.2d 352 (Miss.2001):

> On November 1, 1994, William Wyssbrod and Jack Wittjen entered into a pre-incorporation agreement to form Quality Pallets, Inc. ("QPI"). Wyssbrod and Wittjen were the two major shareholders of QPI, each owning fifty percent of the shares outstanding, and Wyssbrod was president of the corporation. According to the pre-incorporation agreement, QPI was to be managed by W.W. Companies, Inc. ("WWC"), a sole proprietorship owned by Wyssbrod. A bank account was maintained at First State Bank of Holly Springs on behalf of QPI.
>
> The pre-incorporation agreement provided that Wittjen would "provide working

capital of approximately $6,000 cash, $60,000 accounts receivable, and additional monies at his discretion, necessary to get the business started until [QPI had] its own working capital to run or [could] borrow money on its own without having to ask for the signature of Jack Wittjen." The cause of action asserted by Wyssbrod arose from Wittjen's agreement to provide working capital for the new corporation, in which Wittjen allegedly agreed to cover checks on behalf of QPI when there were insufficient funds in QPI's account at First State Bank. Wittjen initially covered bad checks written on the account, but then gave notice to Wyssbrod that he would no longer cover bad checks by letter dated May 5, 1995. *Id.* at 355.

At the time the initial complaint was filed, the plaintiffs were represented by Martin H. Aussenberg, a member of the Tennessee bar. Leigh A. Rutherford served as Mississippi counsel for the plaintiffs until November 1995, when Sidney Beck was substituted for Rutherford. Beck requested and was allowed to withdraw in January 1996, and was replaced by Omar D. Craig.

An amended complaint was later filed, naming QPI and WWC as plaintiffs. Wyssbrod was not listed as a plaintiff on the second complaint. On June 10, 1996, a third and final amended complaint was filed naming QPI and Wyssbrod, d/b/a WWC, as plaintiffs.[2] Wittjen asserted a counterclaim for dissolution of QPI, and First State Bank counterclaimed against QPI and Wyssbrod for recovery of the amounts of the overdrafts.

On October 18, 1996, the circuit court entered a scheduling order in which it directed QPI, through Wyssbrod, to report all business transactions of QPI to Wittjen's counsel on fourteen-day intervals. By order dated January 16, 1997, the court found that Wyssbrod had failed to provide a current set of corporate records as previously ordered by the court. The court found Wyssbrod in contempt and entered sanctions against him in the amount of $1,000. The court stated that the sanctions were to be paid from Wyssbrod's personal funds and not from the funds of QPI.

On January 27, 1997, the court ordered that the parties and counsel appear for a status conference on January 30, 1997. On January 30, 1997, Wyssbrod filed a motion for relief from the order sanctioning Wyssbrod. Wyssbrod also filed, on that same day, a Motion to Dismiss Complaint and Counterclaims based on the filing of a bankruptcy petition by QPI that morning.[3] The status conference was held despite the filing of the bankruptcy petition. Aussenberg did not appear at the conference.[4] The court found that its previous sanctions against Wyssbrod were more appropriately placed on Aussenberg. The court then ordered that Aussenberg, rather than Wyssbrod, pay the $1,000 in sanctions. Pursuant to the court's order of February 18, 1997, the case was stayed pending the outcome of the bankruptcy proceedings.

On April 1, 1998, the bankruptcy court entered an Order and Notice of Dismissal of Adversary Proceeding of State Court Actions Removed to U.S. Bankruptcy Court and Abandonment of Property. The order dismissed the suit of QPI against Wittjen and First State Bank and assigned any remaining claims of QPI to Wittjen. The action proceed-

---

2. Aussenberg maintains that he did not sign the Third Amended Complaint submitted by Craig.

3. QPI filed a voluntary petition for bankruptcy in the Bankruptcy Court for the Western District of Tennessee. Aussenberg did not represent QPI in the bankruptcy proceedings.

4. The circuit court's order stated that Aussenberg refused to attend the conference because he felt that his appearance would be a violation of the automatic stay that took effect upon the filing of the bankruptcy petition. In considering Aussenberg's motives, the court determined that the noted rationale did not justify or excuse Aussenberg's failure to appear. *Id.* at 358.

At the status conference, the circuit court rescinded Aussenberg's authority to practice law *pro hac vice* in Mississippi. The circuit court's February 18, 1997 Order states:

Martin Aussenberg's authority to practice law in this Court Pro Hac Vice is hereby rescinded and he is dismissed from further responsibility in this case to plaintiffs or to this Court.

ed in the circuit court in September 1998.[5]

Wittjen and First State Bank filed motions for summary judgment. On January 5, 1999, the circuit court granted summary judgment in favor of Wittjen and First State Bank. The court noted that all claims of QPI against Wittjen and First State Bank were dismissed by order of the bankruptcy court. The court dismissed with prejudice all claims of Wyssbrod against Wittjen and First State Bank. The court entered judgment in favor of First State Bank on its counterclaim against Wyssbrod. The court awarded First State Bank attorney's fees and expenses pursuant to the contract between the parties and awarded the same to Wittjen pursuant to Miss.Code Ann. § 79–4–7.46 (1996), stating that the action was without reasonable cause. The court found that Wyssbrod's complaints were filed without substantial justification entitling Wittjen and First State Bank to recover attorney's fees and expenses pursuant to the Litigation Accountability Act of 1988, Miss.Code Ann. § 11–55–5(1) (Supp.2000). The court also stated that Wyssbrod had no authority to expend corporate funds to retain counsel for the benefit of the corporation or for himself individually and found that Wittjen was entitled to judgment against Wyssbrod in an amount equal to the corporate funds expended to pay attorney's fees.

The court held a hearing on January 19, 1999, to determine the reasonable and necessary expenses and attorney's fees incurred by Wittjen and First State Bank and to determine whether Wyssbrod's attorneys should be personally liable for any of the fees and expenses. In the resulting order of the court, the court considered each factor of Miss. Code Ann. § 11–55–7 and concluded that Wyssbrod and Aussenberg should be jointly and severally liable to First State Bank and Wittjen for attorney's fees and expenses because the Third Amended Complaint was filed without substantial justification. Fees and expenses were awarded to First State Bank in the amount of $25,724.38 and to Wittjen in the amount of $47,870.64.

The court also entered judgment against Wyssbrod in the amount of $43,212.75, representing the amount of corporate funds expended by Wyssbrod without corporate authority. The court held Wyssbrod jointly and severally liable to Wittjen, who had been assigned the claims of QPI by the bankruptcy court, along with Aussenberg, Craig, and Beck for the amounts received by each as attorney's fees: Aussenberg in the amount of $27,662.42, Craig in the amount of $14,550.30, and Beck in the amount of $1,000.[6]

*Id.* at 355–56.

On appeal by Wyssbrod, Aussenberg, and Craig, the Mississippi Supreme Court,

---

**5.** Aussenberg notes that Mississippi circuit court judge, Judge George B. Ready, filed a complaint against appellant with the Tennessee Board of Professional Responsibility in September 1998. This complaint was pending before the Board at the same time that the counterclaims of Wittjen and First State proceeded before Judge Ready. Judge Ready's complaint allegedly addressed appellant's perceived inappropriate conduct during the course of his representation of QPI, Wyssbrod, and WWC. Aussenberg filed a motion to dismiss this complaint with the Board on August 29, 2001. At the time of this appeal, the complaint was still pending before the Board, as was Aussenberg's motion to dismiss.

**6.** Aussenberg maintains that he was not served with a summons or other process with regard to the money judgment entered against him.

sitting en banc, determined: (1) circuit court properly sanctioned Aussenberg for direct contempt in his failure to appear at the status conference as ordered by the court; (2) Aussenberg was not entitled to formal notice of the status conference or a separate evidentiary hearing where Aussenberg was in direct contempt of court order; (3) trial court did not err in awarding attorney's fees and expenses against Aussenberg, pursuant to Miss.Code Ann. § 11–55–7, for filing a claim without "substantial justification"; (4) Aussenberg had notice of court's Order granting summary judgment and also had notice of the evidentiary hearing held regarding the reasonableness of the attorney's fees and expenses awarded against appellant, but chose not to attend; (5) circuit court was without authority to enter judgment against Aussenberg and Craig ordering attorneys to disgorge corporate funds received as attorney's fees. *Id.* at 369. The Court additionally reduced the sanctions against Aussenberg from $1,000.00 to $100.00 pursuant to Miss.Code Ann. § 9–1–17 (Supp.2000), and affirmed the circuit court's award of attorney's fees and expenses pursuant to the Litigation Accountability Act. *Id.*

On July 17, 2001, First State filed a Petition to Enroll and Enforce Foreign Judgment in the Circuit Court of Tennessee at Memphis, Tennessee.[7] First State sought enforcement of the Mississippi circuit court's judgment against Wyssbrod and Aussenberg pursuant to T.C.A. § 26–6–101 et seq., and for the sum of $33,412.60, plus interest. On October 3, 2001, First State filed a Notice of Voluntary Dismissal of its petition to enforce judgment against Wyssbrod d/b/a W.W. Companies. First State averred that this dismissal had no effect on its claim against Aussenberg.

On October 5, 2001, Aussenberg filed a Motion to Dismiss and Answer to First State's petition. Aussenberg moved the Court for relief from any final judgment entered by the Mississippi circuit court. In early December 2001, an order was entered to transfer Case No. CT–004350–01, styled *First State Bank of Holly Springs, Mississippi v. Aussenberg,* to Division 9 of the Circuit Court of Tennessee, to be consolidated with the companion case of *Quality Pallets, Inc., and Wyssbrod d/b/a W.W. Companies v. Wittjen and First State Bank of Holly Springs, Mississippi,* Case No. CT–002006–01.[8] The court noted that "[t]he current issue before each division regarding Defendant's Motion to Dismiss are the same." A Consent Order approving consolidation of these two cases was entered soon thereafter.

On December 12, 2001, Aussenberg filed a Motion to Dismiss all claims against him in the consolidated cases or, in the alternative, a Motion for Summary Judgment. As support for his motions, Aussenberg asserted:

> *H. Wittjen and First State Bank of Holly Springs, Mississippi,* No. CT–002349–00, Division IX.
> This Affidavit lists Aussenberg as the judgment debtor in the above cited decision and provides a last known address for appellant.

7. The record does not include a copy of a Petition to Enroll and Enforce Foreign Judgment filed on behalf of appellee Wittjen. In his brief, Wittjen states:
   The present litigation was begun March 30, 2001 upon the filing by Jackson H. Wittjen an "Affidavit in Support of Registration of Foreign Judgment as to Martin Aussenberg" in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis in [the case of] *Quality Pallets, Inc. and Bill Wyssbrod d/b/a W.W. Companies v. Jackson*

8. Case No. CT–002006–01 also involved Wittjen's counterclaim against Quality Pallets and Wyssbrod, individually and d/b/a W.W. Companies.

The defendant Aussenberg would show that the judgments are void or they are otherwise unenforceable pursuant to Rule 60.02(2) and (3) of the Tennessee Rules of Civil Procedure, because they were entered against him in violation of his rights to due process and equal protection of the law under the Constitution of the United States. The defendant Aussenberg would show that the Court in Mississippi did not have subject matter jurisdiction as to the claims against him, the plaintiff in the Mississippi action did not obtain sufficient service of process and the Mississippi Court did not have personal jurisdiction as to the defendant Aussenberg at the time the judgments in favor of Wittjen and the Bank were entered as to him. Further, pursuant to Rule 60.02(2) and (5), the defendant Aussenberg would also show that this Court should relieve this defendant from the judgment entered in Mississippi, because of misconduct of an adverse party and because it would otherwise be unjust to enforce the judgment obtained under the circumstances and undisputed facts of this case. In addition, the defendant Aussenberg would show that enforcement of the judgment entered against him in Mississippi would, for the same reasons, be contrary to the public policy of the State of Tennessee.

In an Order entered January 25, 2002, the Tennessee circuit court denied Aussenberg's Motion to Dismiss or, in the alternative, Motion for Summary Judgment.

Wittjen filed a Motion to Confirm Enrollment of the Foreign Judgment against Aussenberg on March 25, 2002. First State followed with a similar motion on April 10, 2002.[9] Pursuant to these motions, Wittjen and First State asked that the "judgment filed herein be afforded the full faith and credit of a Tennessee judgment and be deemed enrolled herein." Aussenberg filed an opposition to Wittjen and First State's motions on April 18, 2002. Aussenberg opposed enrollment of the foreign judgment on several grounds, including assertions that (1) appellant had not participated in the Quality Pallets litigation for approximately two full years prior to the filing of First State and Wittjen's summary judgment motions, (2) Aussenberg was never a party to the Mississippi proceedings, and (3) appellant was discharged by the Mississippi circuit court from further involvement. Aussenberg further opined:

> The crux of the problem in this case is that the result reached by the courts in Mississippi could be justified only if Mr. Aussenberg had been actively participating in the case at the time that the judgments were entered against him or if the judgments had been entered against him prior to his dismissal from the case.

On May 7, 2002, the Tennessee circuit court entered two separate orders confirming enrollment of the foreign judgment against Aussenberg; one order granted First State's motion to confirm enrollment, and the second granted Wittjen's motion seeking the same resolution. Both orders provided that the judgment of the Mississippi circuit court "shall be afforded full faith and credit pursuant to T.C.A. § 26–6–101 et seq." Aussenberg appeals, presenting for review the following issue, as stated by appellant:

> Whether judgments entered against a Tennessee lawyer in Mississippi in litigation in which he appeared *pro hac vice*

---

9. Neither Motion to Confirm Enrollment of Foreign Judgment was included as part of the original record on appeal in this case. These motions were later added to the record pursuant to the circuit court's Order supplementing the record on appeal.

are entitled to full faith and credit in Tennessee when (a) the judgments were entered against the Tennessee lawyer two years after he was discharged from further responsibility in the Mississippi case, (b) the Tennessee lawyer was not served with a summons or other process relating to the claim for a money judgment against him, (c) the Mississippi trial judge who entered the judgment had filed a complaint against the Tennessee lawyer with the Tennessee Board of Professional Responsibility which complaint was still pending at the time that he entered judgments against the Tennessee lawyer, (d) the Mississippi trial judge's re-election campaign manager also represented one of the plaintiffs in the action against the Tennessee lawyer, (e) the Mississippi trial judge had ex parte contact regarding the judgments with counsel for the Tennessee lawyer's adversary, and (f) the Mississippi trial court judge had indicated a bias against Tennessee lawyers appearing in his court.

Based on our reading of the record, the briefs submitted, and pertinent legal and statutory authority, we restate the issue in this case as whether Aussenberg's appeal is barred by *res judicata* in light of the Mississippi Supreme Court's holding in *Wyssbrod v. Wittjen,* 798 So.2d 352 (Miss. 2001).

█ The Tennessee circuit court's decision to grant full faith and credit to the judgment of the Mississippi circuit court is a question of law. As such, our review of the trial court order is *de novo* upon the record with no presumption of correctness accompanying the trial court's conclusions of law. *See* Tenn. R.App. P. 13(d); *Waldron v. Delffs,* 988 S.W.2d 182, 184 (Tenn. Ct.App.1998); *Sims v. Stewart,* 973 S.W.2d 597, 599–600 (Tenn.Ct.App.1998).

In *Coastcom, Inc. v. Cruzen,* 981 S.W.2d 179 (Tenn.Ct.App.1998), this Court introduced the parameters for determining whether an enrolled foreign judgment may be vacated, stating:

Foreign judgments are entitled to full faith and credit. U.S. Const. art. IV, § 1. Once a foreign judgment has been enrolled, it has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a court of record in Tennessee and may be enforced or satisfied in a like manner. T.C.A. § 26–6–104(c). Therefore, the grounds and procedure for vacating or reopening foreign judgments are those contained in Rule 60.02 Tenn. R. Civ. P. *Biogen Distribs., Inc. v. Tanner,* 842 S.W.2d 253, 256 (Tenn.Ct.App.1992). Parties seeking to undermine the validity of a foreign judgment must meet a "stern and heavy" burden to demonstrate that the foreign judgment should not be enforced in Tennessee. *Dement v. Kitts,* 777 S.W.2d 33, 36 (Tenn.Ct.App. 1989). The factual issues underlying the foreign judgment may not be the basis of an inquiry to deny the foreign judgment full faith and credit. *Benham v. Fisher,* 650 S.W.2d 759 (Tenn.Ct.App. 1983).

*Id.* at 181.

█ "The full faith and credit clause requires that the common law doctrine of *res judicata* be applied in one state to a judgment rendered in another state to the same extent that it applied in the state of its rendition." *Id.* (citing *Atchley v. Atchley,* 585 S.W.2d 614, 616 (Tenn.Ct.App. 1978)). "Res judicata is a doctrine which bars a second suit between the same parties or their privies on the same cause of action, with respect to all the issues which were (or could have been) litigated in the former suit." *Sweatt v. Tennessee Dep't of*

*Corr.*, 88 S.W.3d 567, 569 (Tenn.Ct.App. 2002) (citing *Lien v. Couch*, 993 S.W.2d 53, 56 (Tenn.Ct.App.1998); *Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn.1995)). Moreover, "[m]aterial facts or questions which were in issue in a former action and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and such facts or questions become res judicata and may not again be litigated in a subsequent action brought between the same parties or their privies." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 230 (Tenn.Ct.App.2000) (quoting *Medlock v. Ferrari*, 602 S.W.2d 241, 246 (Tenn.Ct. App.1979)).

Aussenberg's appeal of the Tennessee circuit court's decision confirming enrollment of the foreign judgment is premised on three primary assertions, to wit: (1) the Mississippi circuit court lacked personal jurisdiction over appellant at the time that the money judgments against Aussenberg were entered; (2) plaintiffs Wittjen and First State failed to obtain "sufficient service of process" as to appellant; and (3) the Mississippi circuit court "did not have subject matter jurisdiction as to the claims against [appellant]."

In *Wyssbrod v. Wittjen*, the Mississippi Supreme Court explicitly addressed Aussenberg's assertion that the circuit court lacked personal jurisdiction over appellant with regard to the court's award of attorney's fees and expenses pursuant to Mississippi's Litigation Accountability Act. The Court also considered Aussenberg's assertion that Wittjen failed to obtain sufficient service of process as to appellant. We quote at length from the Court's opinion:

> Aussenberg asserts that the circuit court lacked personal jurisdiction over

him for the purposes of the award of attorney's fees and expenses since he was neither a party to the action nor counsel of record. Aussenberg contends that in order for the circuit court to properly enter a judgment against him for fees and expenses, it was essential that he receive service of process.

\* \* \* \* \* \*

At the hearing regarding attorney's fees and sanctions, the circuit judge stated that he directed that Aussenberg be given notice of the hearing "because he could be potentially hit with a great deal of responsibility here." Wittjen's counsel responded that he had sent Aussenberg a copy of the order granting summary judgment and the order setting the hearing by both regular mail and certified mail. Wittjen's counsel had with him a signed return receipt, and Wittjen's counsel stated that he had sent a copy of the receipt via facsimile to Aussenberg's office. Aussenberg made no reply.

Clearly, Aussenberg had actual notice of the order granting summary judgment and the evidentiary hearing regarding the attorney's fees and expenses. He chose not to respond. The rules regarding disciplinary action against attorneys practicing before the court clearly contemplate that no formal service of process is necessary, but rather that by appearing before the court in a matter, attorneys submit themselves to the jurisdiction of the court for disciplinary purposes under the rules of court for matters arising out of their representation.[10]

\* \* \* \* \* \*

The claim for recovery of attorney fees asserted by Wittjen is not an original action, but arises out of the actions of

---

**10.** M.R.A.P. 46(b)(2), as it existed at the time of the Mississippi circuit court's judgment

against Aussenberg for attorney's fees and expenses, provided:

Aussenberg committed during the time he was an attorney in this case. As Wittjen asserts, Aussenberg received notice of Wittjen's claim, by mail, the same as he would have received had he remained an attorney in the case.

*Id.* at 365–66.

 It is apparent from the above quoted passage that the Mississippi Supreme Court considered and ruled upon the issues of personal jurisdiction and sufficient service of process.[11] Moreover, based upon our reading of M.R.A.P. 46(b)(2), *supra* note 10, and in consideration of the Mississippi Supreme Court's affirmance of the circuit court's award of attorney's fees and expenses, we find that the Mississippi circuit court had subject matter jurisdiction to award such damages under the Mississippi Litigation Liability Act.[12]

 In light of the Mississippi Supreme Court's ruling, we find that Aussenberg's appeal is barred under the common law doctrine of *res judicata*. We thereby affirm the orders of the Tennessee circuit court confirming enrollment of the Mississippi Court Judgment against Aussenberg with respect to appellees First State and Wittjen.[13] The Mississippi judgments shall be afforded full faith and credit in Tennessee pursuant to T.C.A. § 26–6–101 et seq. Costs of this appeal are assessed against Martin Aussenberg and his sureties.

---

A foreign attorney appearing as counsel *pro hac vice* before the Supreme Court or the Court of Appeals or any court or administrative agency of this state *shall be subject to the jurisdiction of the courts of this state in any matter arising out of the attorney's conduct in such proceedings.* The attorney shall study and comply with the standards of professional conduct required of members of the Mississippi Bar and shall be subject to the disciplinary jurisdiction of the courts of this state, of the disciplinary tribunals of the Mississippi Bar, and of the Mississippi Board of Bar Admissions with respect to any acts occurring during the course of such appearance.

(emphasis added).

M.R.A.P. 46(d) further provided:

Every petition, motion, brief, or other paper filed by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. The appellate court may, after reasonable notice and an opportunity to show cause to the contrary, and after hearing, if requested by the attorney, take any appropriate disciplinary action against any attorney who practices before it for conduct unbecoming a member of the bar, or for failure to comply with these rules or any order of the Supreme Court or the Court of Appeals, or for filing any frivolous petition, motion, brief, or other paper.

11. While the language utilized by the Mississippi Supreme Court explicitly addresses only whether Wittjen obtained sufficient service of process, we interpret the Court's decision as a blanket determination that appellees obtained sufficient service of process as to appellant with regard to the monetary judgments levied against him. Assuming arguendo that the Court's ruling does not decide the issue of whether First State obtained sufficient process as to appellant, we note that Aussenberg did not properly appeal the Court's determination of appellant's constitutional due process claim.

12. To briefly address Aussenberg's allegations of impropriety, misconduct, or conflicts of interests with respect to Mississippi circuit court judge George B. Ready, we note that each of these allegations could have been adjudicated as part of the Mississippi litigation. Therefore, we find that these assertions are also barred as res judicata.

13. Having determined that Aussenberg's appeal is *res judicata,* we need not address First State's issue of whether Aussenberg's appeal was untimely filed.